UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| McKenzie Corey Shelton, | ) C/A No. 4:12-3193-RBH-TER |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Report and Recommendation |
| | ) |
| Leroy Cartledge, Warden, | ) |
| | ) |
| Respondent. | ) |
| _____ | ) |

Petitioner, McKenzie Corey Shelton (Petitioner/Shelton), is currently incarcerated at the McCormick Correctional Institution. Petitioner, appearing *pro se*, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on November 6, 2012. Respondent filed a motion for summary judgment on February 13, 2013, along with a return, supporting memorandum and exhibits. (Docs. #17 and #18). The undersigned issued an order filed February 15, 2013, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. (Doc. #19). Petitioner filed a response in opposition on April 22, 2013. (Doc. #31).

**PROCEDURAL HISTORY**

The Petitioner, McKenzie Corey Shelton, is presently confined at the McCormick Correctional Institution pursuant to orders of commitment from the Clerk of Court for Laurens

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 19.02 (B)(2)(c), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

County, South Carolina. Petitioner was indicted at the September 2001 term of the Laurens County Grand Jury for Murder and Possession of a Weapon During the Commission of a Violent Crime (2001-GS-30-0720). Karl B. Allen, Esquire, represented Petitioner.

The case was initially called before the Honorable James W. Johnson, Jr. on August 25th, 2003. Attorney Geddes D. Anderson represented Brown; Karl B. Allen represented Petitioner Corey Shelton, and Randall S. Hiller represented codefendant Ricky Latimore. Assistant Solicitor Lance Sheek prosecuted the case. Following a <u>Jackson v. Denno</u> hearing, the case was continued on motion of the defendants due to an amendment of the indictment by the prosecution. The case was recalled before Judge Johnson and a jury on October 20, 2003, and trial of the State's case continued until October 23, 2003. With the State's consent, Judge Johnson granted a motion for directed verdict with regard to Ricky Latimore at the conclusion of the State's case. (App.p. 985-86). Trial continued until October 29th, 2003, when the jury convicted both Brown and Shelton of murder and possession of a firearm during commission of a violent crime. (App.p. 1356-57). Judge Johnson then sentenced the two co-defendants to life imprisonment for murder and a concurrent five (5) years on the firearms charge. (App.p. 1379).

DIRECT APPEAL

A timely Notice of Appeal was filed on Petitioner's behalf and an appeal was perfected. On appeal, the Petitioner was represented by Joseph L. Savitz and Assistant Appellate Defender Eleanor Duffy Cleary of the South Carolina Office of Appellate Defense. The Initial Brief of Appellant was filed on September 8, 2005. The Initial Brief of Respondent was filed on January 27, 2006. The

Final Brief of Appellant was filed on July 18, 2006. In his Final Brief of Appellant, counsel raised the following ground:

> The judge erred by refusing to direct a verdict acquitting Corey Shelton of the crimes charged, where the state failed to introduce any evidence that he committed, or aided and abetted the commission of the murder of Philip Johnson.

Final Brief of Appellant, p. 3. The Respondent, through Senior Assistant Attorney General S. Creighton Waters made a Final Brief of Respondent. The South Carolina Court of Appeals affirmed Applicant's conviction and sentence. (App.p. 1683-84). The Petitioner made a *pro se* notice of appeal to the South Carolina Supreme Court. On December 21, 2006, the Supreme Court of South Carolina issued its order concluding under SCACR Rule 226 that since no petition for rehearing was made or ruled upon by the court of appeals, the matter was dismissed without prejudice. No petition for rehearing was made to the Court of Appeals. The Remittitur was issued on December 28, 2006.

## STATE PCR

Petitioner filed a *pro se* Application for Post-Conviction Relief filed April 18, 2007. (App.p. 1689). On June 24, 2009, the Petitioner, through counsel Tricia A. Blanchette made amendments to the Petition. (App.p. 1694-95). The Respondent made its Return on or about October 1, 2008. An evidentiary hearing into the matter was convened on August 17, 2009, at the Laurens County Courthouse before the Honorable D. Garrison Hill, presiding. The Applicant was present at the hearing and was represented by Tricia Blanchette. Ashley A. McMahan, Esquire, of the South Carolina Attorney General's Office, represented the Respondent. In his amended application, the Petitioner alleged he was being held in custody unlawfully for the following reasons:

1. Ineffective Assistance of Counsel;

a. Failure to prepare and investigate, specifically failure to review Discovery, prepare for trial and look into the other named suspects and related cases;

b. Failure to contact and/ or locate witnesses prior to trial, specifically but not limited to William Stokes and Maurice Bates;

c. Failure to have defense expert, Kelly Fite, investigate the scene prior to the day of his testimony at trial;

d. Failure to request a continuance and/or move for a mistrial when the case was still under investigation and when additional evidence was found during the trial - specifically counsel was ineffective for failure to request to have trial continued for the new bullet jacket that was found during the trial;

e. Failure to enter a contemporaneous objection or address witness Daryl Moseley's request for an attorney;

f. Failure to properly address the inconsistent testimony of Jeff Garrett and his unavailability at trial;

g. Failure to argue that the Applicant requested an attorney prior to providing a written and oral statement, and failure to properly address the suppression of the oral statement during the Jackson v. Denno hearing;

h. Failure to properly address the limited testimony of April Brown and the Court's decision to not allow William Stokes to testify;

i. Failure to call any witnesses on the Applicant's behalf or submit an argument regarding third party guilt.

j. Failure to make contemporaneous objections and move for a mistrial after the burden shifting statements made by the State in closing argument; and

k. Failure to prepare for and submit arguments to the Court on the Motion for Reconsideration. Specifically, failure to address the juror affidavit that was received while the Motion was pending before the Court.

2. Miscarriage of Justice;

a. I have a statement from one of the jurors that states that they were confused by the Judge's jury charges.

3. Brady Violation;

    a.      Material evidence was excluded when it was shown that none of the bullet casings were proven beyond a reasonable doubt to have come from the weapon labeled as being the Defendant's.

(App.p. 1694-1695, 1810-12). At the hearing, testimony was received from the Petitioner and Karl Allen. (App.p. 1706-1807).

On January 28, 2010, the Honorable D. Garrison Hill issued an order denying and dismissing Petitioner's application for post-conviction relief with prejudice. (App.p. 1809-1826). Petitioner's subsequent Rule 59(e), SCRCP, was denied on March 2, 2010. App.p. 1842-43.

## PCR APPEAL

A timely Notice of Appeal was filed following the denial of PCR. Petitioner filed a Petition for a Writ of Certiorari on August 31, 2010. In the Petition for Writ of Certiorari, filed by counsel Robert M. Pachak of the South Carolina Commission on Indigent Defense, Office of Appellate Defense, the following issue was presented:

> Whether defense counsel was ineffective in failing to object or move for a mistrial to the solicitor's closing argument that was both burden shifting and a comment on petitioner's right to remain silent?

Petition, p. 2. The Respondent, through Assistant Attorney General Jennifer A. Kinzeler made a Return to the Petition on October 15, 2010, restating the issues presented as follows:

> 1. Is there any evidence of probative value to support the PCR court's ruling that Petitioner was not entitled to post-conviction relief on the ground that trial counsel was ineffective for failing to object to the solicitor's closing argument?
>
> 2. Is there any evidence of probative value to support the PCR court's ruling that Petitioner was not entitled to post-conviction relief on the ground that trial counsel was ineffective for failing to move for a mistrial due to the solicitor's closing argument?

Return to Petition, p. 2.

On August 19, 2011, the Supreme Court granted certiorari as to Issue IA and IB and denied certiorari as to the remaining questions. On September 19, 2011, the Petitioner made his brief of Petitioner. The Brief of Respondent was filed January 18, 2012, by Assistant Attorney General Ashley A. McMahan. On May 9, 2012, the Supreme Court of South Carolina entered its opinion that the writ of certiorari is dismissed as improvidently granted. On May 30, 2012, the remittitur was issued.

## **HABEAS ALLEGATIONS**

Petitioner filed his petition on November 6, 2012, in which he raises the following allegations:

I. Prosecutorial misconduct - violation of Miranda - Due Process Violation.

A.  At the Laurens County Sheriff's Department the Petitioner was brought in for questioning where he entered into interrogations on two separate days. As a result, two statements were taken, "one oral and one written," which led (ultimately) to the confiscation of evidence (alleged) for use at the Petitioner's trial. The trial judge dismissed the written statement under Miranda. The orals statement was ruled admissible. This was an error, as well. (See attachments)- (petitioned the South Carolina Supreme Court to present this issue as a "pro se" litigant and was denied). Ground argued at PCR hearing and preserved through (59e).

II. Prosecutorial Misconduct - Due Process Violation.

1. Introduction of weapon(s) evidence (alleged) seized in violation of Miranda. Also, bullet (shell) casing (alleged).
2. Improper jury charge
3. Improper denial of motion for a directed verdict.
4. Insufficient (Brady) material - (no interrogation record for August 26, 2001).

      III.    Due Process Violation (Certiorari from PCR) Denial of Right to Cross-Appeal under (pro se) status.

           1.    Initially petitioned S.C. Supreme Court for Pro Se status.
           2.    Pro Se denied.
           3.    Supreme Court granted certiorari to hear argument(s).
           4.    Appellate counsel submitted one (1) issue for review.
           5.    Certiorari "Dismissed As Improvidently Granted."
           6.    No petition for rehearing (cross appeal) submitted by appellate counsel.
               A. The S.C. Supreme Court would not entertain Petition for Rehearing (Cross Appeal) from Petitioner as a pro se litigant while represented by counsel, citing no "hybrid representation."

(Petition).

## STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Under § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

Thus, a writ may be granted if a state court "identifies the correct principle from [the Supreme] Court's decisions but unreasonably applies that principle of law" to the facts of the case. Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (citing Williams v. Taylor, 529 U.S. 362, 413 (2000)). However, "an 'unreasonable application of federal law is different from an incorrect application of

7

federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." *Id.* "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." McHone v. Polk, 392 F.3d 691, 719 (4th Cir. 2004). Further, factual findings "made by a State court shall be presumed to be correct," and a Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## PROCEDURAL BAR

The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> . . . the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice" resulting from the alleged constitutional violation.

Smith v. Murray, 477 U.S. 533 (quoting Wainwright v. Syke s, 433 U.S. at 84 (1977)). See also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas Petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a Petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S.478, 496 (1986).

## **ANALYSIS**

GROUND ONE

In Ground One, Petitioner argues that he gave two statements, one oral and one written, while being interrogated without being read his Miranda rights. Petitioner argues that the trial judge dismissed the written statement under Miranda but ruled the oral statement was admissible. He contends that he petitioned the Supreme Court to present the issue as a *pro se* litigant but was denied. Petitioner argues that this issue was preserved as it was argued at PCR and "preserved through 59(e)." (Petition). Petitioner checks on his petition form that this issue was not raised on direct appeal because his appellate counsel only chose to argue one issue.

Respondent argues that this issue should be dismissed as it is procedurally barred because it was not raised on direct appeal. Respondent asserts that the appeal was limited to the direct appeal issue of whether the trial judge erred by refusing to direct a verdict acquitting Petitioner where the state failed to introduce any evidence that he committed or aided and abetted the commission of murder.

As this issue was not raised on direct appeal, it is procedurally barred from federal habeas review. Since Petitioner could have raised this allegation on direct appeal, he cannot assert these issues for the first time in this federal habeas petition. Murray v. Carrier, 477 U.S. 478 (1986). See Coleman, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review). Petitioner has not demonstrated cause and prejudice for his procedural default of this claim. Therefore, it is recommended that Respondent's motion for summary judgment be granted with regard to Ground One.

GROUND TWO

In Ground Two, Petitioner argues that there was: (1) prosecutorial misconduct in relation to the introduction of weapons evidence seized in violation of his Miranda warnings; (2) an improper jury charge; (3) an improper denial of a motion for directed verdict; and, (4) insufficient Brady materials because there was no interrogation record for August 26, 2001.

Respondent argues that issue one within Ground Two asserting prosecutorial misconduct relating to the introduction of evidence was not raised in the direct appeal and is barred from consideration in federal habeas review. As to the second issue (improper jury charge) within

Ground Two, Respondent asserts that Plaintiff's argument is unclear but, in any event, it was not raised on direct appeal and is barred. With relation to issue four within Ground Two that there was insufficient Brady material because there was no record of the August 26, 2001, interrogation, Respondent asserts that this claim was not raised at trial or in the PCR appeal so that it is barred from federal habeas review. With regard to issue three within Ground Two that the trial court improperly denied a motion for a directed verdict or acquittal, Respondent argues this issue was raised in the direct appeal and denied by the South Carolina Court of Appeals. Respondent asserts that there was no petition for rehearing filed with the Court of Appeals or certiorari filed with the South Carolina Supreme Court so that the claim was abandoned and barred from federal habeas review.

The only issue raised in the direct appeal was whether or not the "judge erred by refusing to direct a verdict acquitting Petitioner of the crimes charged, where the state failed to introduce any evidence that he committed, or aided and abetted the commission of the murder of Philip Johnson." Therefore, issue three of Ground Two was raised in the direct appeal[2], but issues one, two, and four were not raised and are barred from federal habeas review.[3]

Assuming the issue of whether the trial court erred in failing to grant a motion for directed verdict is exhausted for purposes of federal habeas review, this issue fails. Petitioner's claim that the trial court erred in failing to direct a verdict of acquittal goes to the sufficiency of the evidence. Such

---

[2] The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. State v. McKennedy, 348 S.C. 270, 559 S.E.2d 850 (S.C.2002); see also In re Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases, 321 S.C. 563, 471 S.E.2d 454 (S.C.1990).

[3] Petitioner has not demonstrated cause and prejudice for his procedural default of these issues.

a claim is cognizable on collateral review; however, a federal court's review of such claim is "sharply limited. Wilson v. Greene, 155 F.3d 396, 405 (4th Cir.1998), cert. denied, 525 U.S. 1012, 119 S.Ct. 536, 142 L.Ed.2d 441 (1998) (quoting Wright v. West, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992)); see also Evans-Smith v. Taylor, 19 F.3d 899, 905 (4th Cir.1994) ["The standard is obviously rigorous."] "Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review". Wilson, 155 F.3d at 405-406 (citing Wright, 505 U.S. at 292). Further, a federal reviewing court must consider circumstantial as well as direct evidence and allow the government the benefit of all reasonable inferences from the facts proven to the facts sought to be established, United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982), and when faced with all the evidence that allows conflicting inferences, this Court must presume that the jury resolved such conflicts in the state's favor. Jackson v. Virginia, 443 U.S. 307, 326, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Therefore, Petitioner is entitled to relief only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt. Wilson, 155 F.3d at 406 (quoting Jackson, 443 U.S. at 324)); see also George v. Angelone, 100 F.3d 353, 357 (4th Cir.1996); Bradley v. State, No. 04-1278, 2005 WL 3475770 at *6 (D.S.C. Apr.5, 2005).

      The Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n. 16. Also, a federal reviewing court "must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982). Further, "under Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review." Schlup v. Delo,

513 U.S. 298, 330, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). See also <u>Jackson</u>, 443 U.S. at 318-19 ("[T]his inquiry does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' ") (emphasis in original).

Applying this criteria to this, Petitioner was not entitled to a directed verdict on the charges against him because, when the direct and circumstantial evidence is viewed in the light most favorable to the prosecution, it cannot be said that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 324.

South Carolina has defined the crime of murder as the "killing of any person with malice aforethought, either express or implied." S.C.Code Ann. § 16-3-10. "Malice is the wrongful intent to injure another and indicates a wicked or depraved spirit intent on doing wrong .... It is the doing of a wrongful act intentionally and without just cause or excuse ...." <u>State v. Reese</u>, 370 S.C. 31, 633 S.E.2d 898, 902 (S.C.2006) (citing <u>State v. Kelsey</u>, 331 S.C. 50, 502 S.E.2d 63 (1998) and <u>Tate v. State</u>, 351 S.C. 418, 570 S.E.2d 522 (S.C.2002)). The direct and circumstantial evidence presented at trial, as well as the reasonable inferences, must be viewed in the light most favorable to the prosecution. <u>Tresvant</u>, 677 F.2d at 1021. With respect to the element of malice, malice could be inferred from the circumstances surrounding the killing. See <u>State v. Watson</u>, 349 S.C. 372, 563 S.E.2d 336, 338 n. 5 (S.C.2002) (extreme recklessness can lead to an inference of malice) *citing* <u>State v. Mouzon</u>, 231 S.C. 655, 99 S.E.2d 672, 675 (1957) (malice may be inferred from an act so reckless as to manifest depravity of mind and disregard of human life).

As argued by the Respondent, the record contains sufficient evidence to support the denial of the directed verdict motion on the murder charge. This case involved a drive-by shooting of a fourteen year old boy for which three defendants were arrested. At trial, the deceased's cousin,

Xavier Smith, testified that he was with his deceased cousin on the night of the shooting. Smith testified that they had gone to a high school football game and were hanging out at a friend's house outside when the shooting occurred. Smith testified that they were outside when a "big" dark colored car came by and fired some shots out of the window. (App. 501-503).

Additionally, the state introduced a statement of Darryl Mosley, cousin to the defendants, who described Petitioner getting into a green four-door Pontiac Catalina car with Derek Brown and Ricky Latimore (co-defendants)the night of the incident carrying an SKS rifle with banana clips strapped around his neck. Moseley retracted his statement at trial stating that he never read the statement and that he was lying at the time of the statement because the officers threatened him. (App. 658-659). However, he did admit the statement accurately reflected what he told the officer but that he was lying at the time he gave the statement. (App. 662-663).

Captain Frederick Stephone Williams testified that he spoke with Petitioner after his arrest and Petitioner told Williams where he could locate the weapon. After going to the residence that Petitioner described, the Officers found an AK-47, some banana clips for the AK-47, and a .32 caliber revolver. (App. 721-724).

Eddie Smith testified that he was a chief deputy with the Lauren's County Sheriff's office and was present when co-defendant Derrick Brown gave a statement. (App. 1195). In the statement, Brown admitted that he was driving a green 1970 model Pontiac Catalina on August 24, 2001, and drove to Gray Court and Pleasant View Drive where the shooting occurred. Smith testified that Brown stated that he had a .45 caliber Springfield semiautomatic which he shot out of his window after he heard shots fired believing someone was shooting at him. Brown stated that he then went

14

to his grandmother's house and hid the gun. (App. 1195-1197). Smith testified that Brown personally led them to where he hid the .45 pistol. (App. 1199).

Kenneth Whitler testified that he was employed with SLED at the time as an examiner in the firearms and tool mark department of the laboratory. (App. 569). Whitler testified that while the bullet fragment removed from the victim was too damaged to conclusively identify it as coming from Petitioner's AK-47, "the bullet jacket has the same rifling characteristics as that test fired bullet in that rifle produced." (App. 582). Whitler testified that he was able to identify five of the cartridge casings as being ejected from the AK-47. (App. 578). Whitler also testified that he could "only say it is possible that that firearm fired this bullet jacket or it was fired by another similar rifle." (App. 583). He further testified that the bullet that killed the victim did not come from the .45 pistol. (App. 585).

Counsel for both Petitioner and Brown made and joined in each other's motions for direct verdict. (App. 1290-1320). The trial court ruled that "[t]o grant such a motion as made, the motion for directed verdict on behalf of each defendant, I believe would require this court to weigh the evidence, which everyone has admitted that it's not the proper function of the court at this time. I do find that there is sufficient evidence that has been placed into the record that if believed by the jury would support a verdict by the jury." The trial court denied the motions for directed verdict. (App. 1321-1322).

The South Carolina Court of Appeals found the following with regard to this issue on direct appeal:

> This case involves the drive-by shooting of fourteen-year-old Phillip Johnson, Jr. On August 4, 2001, Corey Shelton, Derek Brown, and Ricky Latimore were indicted with murder and possession of firearm

>  or a knife during commission of a violent crime in connection with his incident.[4]

The court when on to hold:

> Shelton contends that "[a]t best, the State proved that, shortly before Johnson was killed, Shelton was armed with a rifle that could have fired the fatal shot." We disagree.
>
> The State introduced substantial circumstantial evidence linking Shelton to Johnson's murder. The State proved Shelton had an AK-47 with banana clips that fired ammunition consistent with that which killed Johnson, and ejected the same casings as those found in the vicinity of Johnson's murder. The State conclusively matched Shelton's .32 caliber revolver to a bullet that penetrated a nearby house. The State also introduced a statement from Darryl Mosely that described Shelton on the night of the incident getting into the car, carrying what Mosely described as an SKS rifle with banana clips, along with Brown, who admitted driving the car and firing a pistol at the crime scene. This evidence is sufficient to support submission to the jury. See State v. Weston, 367 S.C. 279, 625 S.E.2d 641 (2006) (finding circumstantial evidence sufficient to support conviction for murder where victim's body was never found but she had mysteriously disappeared, and where physical evidence at the residence defendant and victim shared, alongside defendant' suspicious behavior indicate a murder might have taken place); State v. Freiburger, 366 S.C. 125, 620 S.E.2d 737 (2005)(finding circumstantial evidence sufficient to support conviction for a cab-driver's murder where there was evidence that on the day of the murder, the defendant bought the same type of gun that killed the victim, where two days after the murder he was staying at a motel close to where the victim's cab was found, and where the defendant was arrested with the gun that ballistics indicated killed the victim); State v. East, 353 S.C. 634, 578 S.E.2d 748, (Ct. App. 2003)(finding defendant not entitled to a directed verdict on one of seven counts of kidnapping where victim of that count did not testify, but other witnesses testified that victim was present at the scene). Given the aforementioned substantial evidence linking Brown to the murder, and viewing it in the light most favorable to the State, the circuit

---

[4] At the conclusion of the State's case, and with consent of the State, the judge directed a verdict acquitting Latimore.

>     court's denial of the motion for directed verdict, and submission of
>     the case to the jury, was proper.

(Order of S.C. Court of Appeals).

Based upon a review of the direct and circumstantial evidence presented at trial and viewing the evidence in the light most favorable to the prosecution, it is clear that a rational jury could have found proof of guilt for the crime of murder. Petitioner has failed to show that "no rational trier of fact could have found him guilty." Therefore, Petitioner fails to show that the state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding. Therefore, it is recommended that issue three within Ground Two be dismissed.

GROUND THREE

In Ground Three of the habeas petition, Petitioner asserts that there was a due process violation when the South Carolina Supreme Court refused to allow him to act *pro se* and to file a petition for rehearing due to hybrid representation issues in relation to his PCR. Respondent argues that this claim concerning the state PCR process does not raise a claim concerning federal habeas corpus relief. This court agrees. Alleged defects in state PCR proceedings are not cognizable in a federal habeas action. Wright v. Angelone, 151 F.3d 151 (4th Cir.1998); Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir.1988) (holding that errors and irregularities in connection with state PCR proceedings are not cognizable on federal habeas review). Thus, it is recommended that summary judgment be granted for the Defendant with regard to Ground Three.

## CONCLUSION

Based on the above reasoning, it is RECOMMENDED that Respondent's motion for summary judgment (docket entry #18) be GRANTED and the Petitioner's Petition for Writ of Habeas Corpus be denied, and the petition dismissed without an evidentiary hearing.

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

June 13, 2013
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**